UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| ECITY MARKET, INC. an Indiana Corporation, | ) ) ) |
| Plaintiff, | ) ) |
| vs. | ) No. 1:13-cv-01622-TWP-DML ) |
| VAUGHN SCOTT BURCH individually, GRAYWOOD CONSULTING GROUP, INC. a Virginia corporation, | ) ) ) ) |
| Defendants. | ) ) |

# Report and Recommendation on
# Plaintiff's Verified Petition to Show Cause Why
# Defendant Should Not Be Held in Contempt and for Sanctions

The plaintiff, eCity Market, Inc. d/b/a Project Management Academy ("PMA") originally filed this case in the Delaware Circuit Court, alleging that the defendants, Vaughn Scott Burch and Graywood Consulting Group, Inc. d/b/a Graywood Training Solutions (collectively, "Burch" or "defendants")[1] had violated certain non-competition and non-disclosure agreements. In addition to the complaint, PMA filed in Delaware County a motion for an emergency temporary restraining order ("TRO").

The Delaware Circuit Court granted the motion and entered a TRO against Burch on September 10, 2013. (Dkt. 1-7) The state court also set the matter for a preliminary injunction hearing to be held on September 20, 2013. Before the scheduled hearing, counsel for Burch contacted counsel for PMA, and the parties agreed to a continuance of that hearing. In return, Burch agreed to an extension of the TRO "until such time that a court of competent jurisdiction has ruled on Plaintiff's request for the issuance of a preliminary injunction." On September 18,

---

[1] The court will distinguish between the defendants where necessary.

2013, the Delaware Circuit Court entered an order extending the TRO consistent with the parties' agreement. (Dkt. 1-7) No preliminary injunction hearing was thereafter requested or held, and the parties agree that the provisions of the TRO remain in effect. The TRO enjoins Burch from, among other things:

a. Competing with PMA by providing or attempting to provide, or advising or assisting others to take advantage of an opportunity to provide, any services related to PMP[2] Training or PMP Exam Preparation courses within the Washington D.C. area, defined as a 30 mile radius from the Washington National (DCA) International Airport from August 20, 2013 through August 20, 2014;

b. Disclosing and/or using, in any manner, PMA's PMP examination preparation course materials, including the Advanced Project Management Training Modules, and any other intellectual property belonging to PMA;

c. Disclosing and/or using, in any manner, PMA's methods, processes, techniques, and customer lists used by PMA in teaching/conducting the PMP examination preparation course;

d. Publishing, advertising and/or marketing any false or misleading advertisements, including but not limited to, statements and/or representations that certain PMP course materials and/or PMP course literature belonging to PMA is the property of Burch and/or Graywood, and statements and/or representations that certain PMA "testimonials" obtained from PMA students are the "testimonials" of Graywood Training Solutions students; and

e. Using or misappropriating any of PMA's trade secrets.

(TRO, Dkt. 1-7 ¶¶ 1 through 5)

Further, the TRO required the defendants immediately to return any and all of PMA's property, including all of its manuals, instructor materials, course binders, course booklets, course pamphlets, customer lists, computer programs and electronic court materials. *Id.* at p. 9.

PMA maintains that shortly after the Delaware Circuit Court extended the TRO, PMA became aware that Burch was violating the TRO. PMA filed on September 27, 2013, a Verified Petition to Show Cause Why Defendants Should Not Be Held in Contempt and for Sanctions

---

[2] "PMP" means Project Management Professional.

("Petition") in the Delaware Circuit Court, and that court scheduled a hearing on the Petition for October 15, 2013. Just a few days before that scheduled hearing, Burch removed the case to this court. The matters raised in the Petition are therefore now pending here for decision.

On February 4, 2014, the parties appeared for a hearing on the Petition,[3] before the undersigned magistrate judge. The parties presented evidence, including the testimony of defendant Vaughn Scott Burch and PMA's President and Chief Information Officer Michael Livingston, and numerous exhibits were admitted into evidence. The magistrate judge also heard the arguments of the parties and took the matter under advisement. The magistrate judge now makes the following Report and Recommendation.[4]

## Findings of Fact

1. Defendant Vaughn Scott Burch ("Scott Burch") and his spouse are the sole shareholders of defendant Graywood Consulting Group, Inc. d/b/a Graywood Training Solutions.

2. The defendants formerly had an independent contractor relationship with PMA. Scott Burch was an instructor in PMA's PMP examination preparation courses in the Washington, D.C. area. PMA also commissioned the defendants to draft and prepare a series of training modules for PMA.

3. At some point in 2013, PMA terminated its contractual relationships with the defendants based on PMA's discovery that the defendants were competing with PMA by

---

[3] Counsel who had appeared for the defendants withdrew after removal. Defendant Vaughn Scott Burch appeared at the hearing *pro se*. Defendant Graywood Consulting Group, Inc. failed to appear by counsel as required and has been repeatedly advised that it must appear in this case by counsel or be subject to default.

[4] The Petition has been referred to this magistrate judge to issue a report and recommendation. Dkt. 24

conducting their own courses in the Washington, D.C. area. PMA then filed suit and obtained the TRO at issue in this case.

4. At the hearing in this matter, PMA introduced documentary evidence that after entry of the TRO, the defendants:

a. offered preparation courses in the area prohibited by the TRO (Ex. 2, 4);

b. advertised modules developed for PMA on the defendants' website (Ex. 6);

c. used testimonials Burch had received while teaching PMA courses from PMA students on defendants' website in a manner that indicated they were from the defendants' customers (Ex. 3, 4 and 5); and

d. used course descriptions and advertising materials that copied those developed for PMA (Ex. 7, 8, 9, 10, and 11).

5. The documentary evidence cited above is compelling and demonstrates that the defendants violated the terms of the TRO.

6. The testimony of Scott Burch revealed a concerted effort on his part to circumvent and evade the provisions of the TRO with tortured interpretations of the TRO. For example, he maintained defendants did not run afoul of the TRO because even though they *advertised* a class to be held in Arlington, Virginia (within the proscribed area by the TRO), if anyone signed up for the course, he moved it to Leesburg, Virginia (outside the proscribed region).

7. Scott Burch's insistence that he had returned all PMA materials and course descriptions was shown to be false because they were copied verbatim (even down to the misspellings) in the defendants' own materials. (*See* Ex. 9.) Scott Burch's assertion that the language used to describe the courses is necessarily similar because these are common topics taught by all the companies in the business may have some merit, but the descriptions the defendants used after entry of the TRO were *identical*—not similar.

8. The evidence also established that student endorsements the defendants used on their website had come from students of PMA. (Ex. 12) The defendants maintained that these endorsements were testimonials to Scott Burch personally, but they were not clearly presented in this manner. Rather, they are included on Graywood Training Solutions's website under the heading, "What Our Customers Are Saying." (Ex. 3, 4, and 5) Moreover, the fact that some of these endorsements refer to an individual that the court infers was Scott Burch is of no moment because the TRO expressly prohibits that.

9. The defendants violated paragraphs 1, 2, 3, and 4 of the TRO and violated its requirement that they return all of PMS's property. PMA did not present evidence sufficient for this court to conclude that any materials used or retained by the defendants were trade secrets of PMA, so the court does not conclude that the defendants violated paragraph 5 of the TRO.

10. Any conclusion of law below, to the extent it constitutes a finding of fact, is incorporated here as a finding of fact.

## Conclusions of Law

1. Based on the evidence and the record in this case, the court has jurisdiction over the parties and over the subject matter of this action.

2. The sole issue presented at the hearing was not the propriety of the TRO but rather whether the defendants have violated the TRO. Having applied the factual findings above to the language of the TRO, the court determines the defendants violated the TRO as set forth in Finding of Fact No. 9.

3. The court heard the parties' arguments regarding the appropriate remedy and sanction should the court find a violation. In weighing a remedy, the court notes that except for the attorney fees PMA has incurred in connection with the TRO and the Petition, its evidence of

damages suffered as a result of the violations is not strong. On the other hand, it notes that the defendants' conduct was not inadvertent but purposeful and that they attempted to evade the TRO by parsing words, by planning to bait and switch customers, and by offering explanations that cannot be squared with unambiguous language in the TRO.

    4.    The court concludes that an appropriate remedy and sanction for the violations is as follows: (a) any continuing conduct of the defendants as described above must cease and defendants must abide by the TRO; (b) the defendants and/or any person or entity acting in concert or participation with them are prohibited from competing with PMA by providing or attempting to provide, or advising or assisting others to take advantage of an opportunity to provide, any services related to PMP Training or PMP Exam Preparation courses within the Washington D.C. area, defined as a 30 mile radius from the Washington National (DCA) International Airport until January 20, 2015;[5] and (c) the defendants shall pay PMA's reasonable attorney fees incurred in connection with the preparation and filing of the Petition and the preparation for and participation in the February 4, 2014 hearing on the Petition. As to the latter,

---

[5] The prohibitions included in the TRO are based on PMA's allegations of the defendants' breach of their contractual obligations. The only contractual obligation at issue here that is limited in duration is the non-competition provision. The contractual duration is one year from termination (until August 20, 2014) (*see* Dkt. 1-3), and that is the date the Delaware Circuit Court adopted for purposes of the non-competition language of paragraph 1 of the TRO. The court here adopts as a remedy and sanction for violation of the TRO an additional five-month non-competition prohibition. The other contractual obligations manifested in the TRO do not have temporal limitations. Therefore, those prohibitions remain in effect, according to the terms of the TRO, "until such time that a court of competent jurisdiction has ruled on Plaintiff's request for the issuance of a preliminary injunction." (*See* Dkt. 1-7.) Any party may seek a hearing on PMA's motion for preliminary injunction, which was filed before removal to this court. In order to do so, however, the parties must comply with the applicable Federal Rules of Civil Procedure and the Local Rules of this court. And to be clear, the enforceability of the non-competition provisions of the parties' agreements would not be examined in the preliminary injunction context because the court has separately adopted a non-competition obligation as a remedy and sanction for the defendants' violation of the TRO.

PMA shall file a fee petition with supporting materials within 14 days of the court's order adopting this Report and Recommendation.[6]

5. Any finding of fact above, to the extent it constitutes a conclusion of law, is incorporated here as a conclusion of law.

The Clerk is directed promptly to mail a copy of this Report and Recommendation to each party in accordance with Fed. R. Civ. P. 72(a). Any objections to this Report and Recommendation must be filed with the court in accordance with Fed. R. Civ. P. 72 and 28 U.S.C. § 636(b)(1) within 14 days of service. Failure to object will result in waiver of objection or appeal of the issues addressed in this Report and Recommendation.

Following the district judge's order on this Report and Recommendation, the magistrate judge will set a status conference to determine what further proceedings are necessary.

IT IS SO RECOMMENDED.

Date: 06/05/2014

*Debra McVicker Lynch*
Debra McVicker Lynch
United States Magistrate Judge
Southern District of Indiana

Distribution:

All ECF-registered counsel of record via email generated by the court's ECF system

Service via first-class U.S. Mail on:

VAUGHN SCOTT BURCH
201 Royal Street SE, Ste F.
Leesburg, VA 20175

---

[6] If the Report and Recommendation is not adopted in full, the court will address matters relating to remedy as appropriate following the district judge's order.